# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

*In Re:*

*KEVIN TREMAYNE SMITH,*

*Case No. 305-16055*
*Chapter 13*
*Honorable Marian F. Harrison*

## MEMORANDUM

This matter is before the court on the confirmation of Kevin Tremayne Smith's ("debtor") proposed Chapter 13 Plan, and the objection filed thereto by Wells Fargo Financial Acceptance Corporation ("Wells Fargo"). The debtor seeks to cram down Wells Fargo's claim asserting that although this is a "910 vehicle," the truck was not purchased for the "debtor's personal use," and /or that Wells Fargo is a non-purchase money security interest holder and therefore not protected under either of the "if" clauses of 11 U.S.C. § 1325(a)'s "hanging paragraph." Wells Fargo contends that the debtor may not utilize 11 U.S.C. § 506 to cram down their claim because the vehicle was purchased for the debtor's personal use, and it is a purchase money security holder entitled to special protections under the first "if" clause of the hanging paragraph. Finally, Wells contends even if the vehicle was not purchased for the debtor's personal use and even if it is not a PMSI holder, it is nonetheless protected from cram down under the second "if" clause of 1325's hanging paragraph. The following constitutes this court's findings of fact and conclusions of law.

The debtor filed a chapter 13 bankruptcy petition on December 22, 2005. Within

365 days of the petition, the debtor entered into a Note and Security Agreement dated April 25, 2005 granting Wells Fargo a security interest in a 2002 Ford Expedition. The debtor originally purchased the vehicle on August 5, 2004, within 910 days of the bankruptcy filing, and granting Wells Fargo a PMSI in the 2002 Ford Expedition. The second April 25, 2005 loan paid off the original note, advanced the debtor additional cash, and was assigned a new loan number by Wells Fargo. The refinancing lowered the original interest rate and created a shorter repayment term.

The debtor's proposed Chapter 13 plan attempts to cram down Wells Fargo's claim valuing the vehicle at $16,050 at 7% interest, and treating the remaining balance as an unsecured debt. Wells Fargo objected.

There are several issues before the court, all dealing with interpretation of what protections, if any, Wells Fargo is afforded by 11 U.S.C. § 1325's so-called "hanging paragraph."[1] Relevant provisions of 11 U.S.C. § 1325(a) of BAPCPA provide:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-
> ...
> (5) with respect to each allowed secured claim provided for by the plan-
> (A) the holder of such claim has accepted the plan;
> (B) ···
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ···; or
> (C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5)(B)(ii). The hanging paragraph following § 1325(a)(9) provides:

---

[1] The last paragraph of § 1325(a), which is unnumbered, is often referred to as the "hanging paragraph" since it was given no specific citation by the statute's drafters. The hanging paragraph prevents certain claims from being subject to the stripping down provision of § 506(a). ***See Rowley v. Wells Fargo Financial Acceptance, __ B.R. __,*** 2006 WL 2466648, *1 (Bankr. S.D. Ill., Aug. 25, 2006).

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if the collateral for the debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The issues presented to the court are as follows:

(1) Does the "hanging paragraph" apply at all to Wells Fargo's claim if the vehicle was not acquired for the personal use of the debtor?

(2) Does Wells Fargo have a purchase money security interest?

(3) If Wells Fargo does not have a PMSI, is Wells Fargo nonetheless afforded additional protections by the second "if" clause of the hanging paragraph?

For the reasons cited herein, the court finds that the vehicle was not acquired for the debtor's personal use thereby rendering the "hanging paragraph" inapplicable to this case. Even if the court is mistaken, the court nonetheless finds that Wells Fargo is a non-PMSI holder and therefore not entitled to protection from cram-down under the first "if" clause of the hanging paragraph, Finally, the court finds that the second "if" clause is also unavailable to protect Wells Fargo from cram down as it is only available to PMSI creditors.

### *(1) Does the "hanging paragraph" apply at all to Wells Fargo's claim if the vehicle was not acquired for the personal use of the debtor?*

The BAPCPA amended section 1325 so that certain secured debts may no longer be "stripped down." When all of the elements of section 1325(a) are met, then a creditor's claim cannot be crammed down. Section 506 shall not apply to a claim if the creditor has a:

(1) purchase money security interest securing the debt that is the subject of the claim,

> (2) the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and
>
> (3) the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49)
>
> (4) acquired for the personal use of the debtor. . .

11 U.S.C. § 1325(a)(9). If these four requirements are satisfied, the allowed secured claim of the creditor is fixed at the amount of the creditor's claim without resorting to the stripping down procedure mandated by § 506(a). ***Rowley v. Wells Fargo Financial Acceptance,*** __ B.R. __, 2006 WL 2466648 (Bankr. S.D. Ill., Aug. 25, 2006).

In this case, it is undisputed that the debt occurred within 910 days of the petition and that the collateral was a motor vehicle. Undecided is whether the vehicle was acquired for "personal use of the debtor," and whether Wells Fargo holds a PMSI. The court will address the personal use argument first.

Considerable judicial debate surrounds the "hanging paragraph." Very few opinions, however, have addressed the requirement that the vehicle be "acquired for the personal use of the debtor." One case addressing the issue is ***In re Jackson***, 338 B.R. 923 (Bankr. M.D. Ga. 2006). In that case, the court endeavored to decipher Congress' intent concerning the debtor's personal use:

> In interpreting the hanging paragraph, the Court begins with the principle that it must enforce the plain language of the statute unless doing so leads to an absurd result. ***Lamie v. U.S. Trustee***, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (quoting ***Hartford Underwriters Ins. Co. v. Union Planters Bank***, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000)). Furthermore, " '[i]t is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.' " ***BFP v. Resolution Trust Corp.***, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (quoting ***Chicago v. Environmental Defense Fund***, 511 U.S. 328, 338, 114 S.Ct. 1588,

4-U.S. Bankruptcy Court, M.D. Tenn.

> 1593, 128 L.Ed.2d 302 (1994)).
>
> In this case, the statute applies to a motor vehicle "acquired for the personal use of the debtor." Nissan does not argue that this language is in any way vague or ambiguous. In fact, it is the one portion of the hanging paragraph of unquestionable clarity in the Court's view. Nissan does argue, however, that the "personal use of the debtor" may include family or household use. However, when Congress wants to include family or household use within the scope of a statute, it knows how to do so. For example, § 101(8) provides, "The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The phrase also arises in § 365(d)(5) (regarding performance of obligations under an unexpired lease); § 506(a)(2) (regarding valuation of certain property); § 507(a)(7) (regarding deposits for the acquisition of certain property); and several subsections of § 522 (regarding exempt property). Consequently, the omission of "family and household" use from the hanging paragraph demonstrates that Congress intended "personal use" standing alone to have a different meaning.
>
> "Personal" is defined as "[o]f or relating to a particular person; private." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000). In this case, the vehicle must have been acquired for the use of a particular person-Debtor-for the hanging paragraph to apply. Nissan has conceded that the Grand Prix was purchased to replace Debtor's wife's previous car, that she has at all times been the primary driver of the Grand Prix, and that Debtor has primary use of a different vehicle. Because the Grand Prix was not acquired for Debtor's personal use, the hanging paragraph does not apply to Nissan's claim.

*In re Jackson* 338 B.R. 923, 925 -926 (Bankr. M.D. Ga. ,2006)(footnote omitted). ***See also In re Lewis***, __ B.R. __, 2006 WL 2372162 (Bankr. D. Kan., Aug. 3, 2006) (although hinting it might rule differently for a spouse of a debtor, finding that "motor vehicle acquired for use by adult daughter was not acquired for "personal use of the debtor.").

In this case, the debtor's undisputed testimony was that his wife and children used the 2002 Ford Expedition. The debtor drove it only to fill it with gas, have it serviced, and when the family went to church on Sundays.

Based on this uncontroverted testimony, this court agrees with ***Jackson***. If

Congress had intended family use, it would have included that language in the additional protections afforded to the PMSI creditor secured by motor vehicles. The court finds, therefore, that this was not a vehicle acquired for the debtor's personal use. As such, the debtor is entitled to utilize 11 U.S.C. § 506 to strip down Wells Fargo's claim in his proposed chapter 13 plan without interference from the "hanging paragraph." On this basis, the court OVERRULES Wells Fargo's objection to confirmation.

### *(2)  Does Wells Fargo have a purchase money security interest?*

Even if the court is somehow mistaken and "personal use of the debtor" is broad enough to encompass personal use of the debtor's family, Wells Fargo is nonetheless excluded from the first "if" clause of the hanging paragraph if it does not hold a purchase money security interest. The debtor claims that the second contract dated April 25, 2005 paid off the first purchase money security interest loan thereby creating a new loan and destroying the original loan's PMSI status. Wells Fargo contends that it retained its PMSI status under the "Dual Status Rule." The court finds that the repayment of the original loan and issuance of a new loan extinguished Wells Fargo's PMSI status.

According to Wells Fargo, its' security interest may have a "dual status" and that the presence of a non-purchase money security interest in collateral does not destroy the previously-obtained purchase money security interest in the collateral. **See In re Nolen,** 53 B.R. 235, 237 (Bankr. M.D. Tenn. 1985). The original loan amount to acquire the 2002 Expedition was $21,140.73. Under the terms of the refinancing, Wells Fargo loaned the debtor an additional $1,040.96. Wells Fargo contends that under the "dual status rule" it retained its' PMSI to the extent of $21,140.73.

The court finds the ***Nolen*** case distinguishable. In ***Nolen***, this court relied upon the then-recent amendment to the PMSI statute. Since that time, T.C.A. § 47-9-103 has been revised and now reads:

> 47-9-103. Purchase-Money security interest; application of payments; burden of establishing
>
> (a) DEFINITIONS. In this section:
>
> > (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
>
> > (2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
>
> . . .
>
> (e) APPLICATION OF PAYMENT.
>
> > (1) In a transaction other than a consumer-goods transaction, if the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation, the payment must be applied:
> >
> > > (A) in accordance with any reasonable method of application to which the parties agree;
> > >
> > > (B) in the absence of the parties' agreement to a reasonable method, in accordance with any intention of the obligor manifested at or before the time of payment; or
> > >
> > > (C) in the absence of an agreement to a reasonable method and a timely manifestation of the obligor's intention, in the following order:
> > >
> > > > (i) to obligations that are not secured; and
> > > >
> > > > (ii) if more than one (1) obligation is secured, to obligations secured by purchase-money security interests in the order in which

those obligations were incurred.

> (2) In a consumer-goods transaction, if the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation:
>
>> (A) the payment must be applied so that the secured party retains no purchase money security interest in any property as to which the secured party has recovered payments aggregating the amount of the sale price including any finance charges attributable thereto; and
>>
>> (B) for the purposes of this subsection only, in the case of items purchased on different dates, the first item purchased shall be deemed the first paid for, and in the case of items purchased on the same date, the lowest priced item shall be deemed first paid for.

(f) NO LOSS OF STATUS OF PURCHASE-MONEY SECURITY INTEREST IN NON-CONSUMER-GOODS TRANSACTION. In a transaction other than a consumer-goods transaction, a purchase-money security interest does not lose its status as such, even if:

> (1) the purchase-money collateral also secures an obligation that is not a purchase-money obligation;
>
> (2) collateral that is not purchase-money collateral also secures the purchase-money obligation; or
>
> (3) the purchase-money obligation has been renewed, refinanced, consolidated, or restructured.

. . .

(h) NON-CONSUMER-GOODS TRANSACTIONS; NO INFERENCE. The limitation of the rules in subsections (e)(1), (f), and (g) to transactions other than consumer- goods transactions is intended to leave to the court the determination of the proper rules in consumer-goods transactions. The court may not infer from that limitation the nature of the proper rule in consumer-goods transactions and may continue to apply established approaches.

8-U.S. Bankruptcy Court, M.D. Tenn.

Case 1:05-bk-16055    Doc 62    Filed 09/13/06    Entered 09/13/06 10:26:44    Desc Main
Document      Page 8 of 13

T. C. A. § 47-9-103. Subsection (f) specifically provides that refinancing does not transform a PMSI into a non-PMSI in a non-consumer transaction. Finally, subsection (h) provides that the limitations of subsection (e)(1), (f), and (g) are to have no influence on a court's determination as to PMSI's character in a consumer-goods transaction. Official Comment 7 and 8 provide further guidance:

> 7. Provisions Applicable Only to Non-Consumer-Goods Transactions.
>
> a. "Dual-Status" Rule. For transactions other than consumer-goods transactions, this Article approves what some cases have called the "dual-status" rule, under which a security interest may be a purchase-money security interest to some extent and a non-purchase-money security interest to some extent. (Concerning consumer-goods transactions, see subsection (h) and Comment 8.) Some courts have found this rule to be explicit or implicit in the words "to the extent," found in former Section 9-107 and continued in subsections (b)(1) and (b)(2). The rule is made explicit in subsection (e). For non-consumer-goods transactions, this Article rejects the "transformation" rule adopted by some cases, under which any cross-collateralization, refinancing, or the like destroys the purchase-money status entirely.
>
> Consider, for example, what happens when a $10,000 loan secured by a purchase-money security interest is refinanced by the original lender, and, as part of the transaction, the debtor borrows an additional $2,000 secured by the collateral. Subsection (f) resolves any doubt that the security interest remains a purchase-money security interest. Under subsection (b), however, it enjoys purchase-money status only to the extent of $10,000.
>
> 8. Consumer-Goods Transactions; Characterization Under Other Law. Under subsection (h), the limitation of subsections (e), (f), and (g) to transactions other than consumer-goods transactions leaves to the court the determination of the proper rules in consumer-goods transactions. Subsection (h) also instructs the court not to draw any inference from this limitation as to the proper rules for consumer-goods transactions and leaves the court free to continue to apply established approaches to those transactions.
>
> This section addresses only whether a security interest is a "purchase-money security interest" under this Article, primarily for purposes of perfection and priority. See, e.g., Sections 9-317, 9-324. In particular, its adoption of the dual-status rule, allocation of payments rules, and burden of proof standards for non-consumer-goods transactions is not intended to affect or influence characterizations under other statutes. Whether a security interest is a "purchase-money security interest" under other law is determined by that law. For example, decisions under Bankruptcy Code Section 522(f) have applied both the dual-status and the transformation rules. The Bankruptcy Code does not expressly adopt the

> state law definition of "purchase-money security interest." Where federal law does not defer to this Article, this Article does not, and could not, determine a question of federal law.

T. C. A. § 47-9-103, Official Comments 7 and 8 (2000 Pub. Acts, c. 846 § 1, effective July 1, 2001).

Thus, under the current code, this court must decide whether Wells Fargo's PMSI was transformed by the refinancing. The court finds the dual-status rule inapplicable to this consumer-goods transaction, and finds that the PMSI was indeed transformed by the <u>new</u> loan made to the debtor on April 25, 2005.

When Wells Fargo loaned money to the debtors in April 2005, it was not advancing money to the seller of the Ford Expedition, nor was it enabling the debtor to buy the vehicle; the debtor had already purchased the truck. This was more than a contract modification; this was a new loan. The new loan's documentation indicates a separate transaction showing $21,140.73 paid on debtor's prior account, and a new loan number. The first loan enabled the debtor to pay for the vehicle, and the second loan enabled the debtor to pay off the first loan and receive additional funds. Under these facts, this court finds that Wells Fargo's PMSI was "transformed" to a non-PMSI by the April 25, 2005 loan.

Based on the foregoing, the court finds, therefore, that not only was the vehicle not for the debtor's personal use, but also that Wells Fargo did not hold a PMSI after the April 25, 2005 new loan. The hanging paragraph requires a PMSI, on a 910-motor vehicle, acquired for the debtor's personal use in order to avoid cram down under section 506. Accordingly, the court OVERRULES Wells Fargo's objection to confirmation.

### *(3) If Wells Fargo does not have a PMSI, is Wells Fargo nonetheless afforded additional protections by the second "if" clause of the hanging paragraph?*

Wells Fargo contends that even if it does not have a PMSI, it is nonetheless spared the stripping of its lien by the second "if" clause of the hanging paragraph. According to Wells Fargo, no PMSI is required to obtain the special protections granted to creditors if the debt was incurred within one year of the bankruptcy filing and the collateral for the debt consists of "any other thing of value." The debtor argues that the second "if" clause requires a PMSI in order to receive hanging paragraph protections.

This court finds the reasoning of ***In re Curtis***, 345 B.R. 756 (Bankr. D. Utah 2006) applicable and persuasive:

> In attempting to construe the hanging paragraph, the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose."
> . . .
> The plain and unambiguous language of the hanging paragraph demonstrates that a creditor must have a purchase money security interest in collateral consisting of "any other thing of value" in order to avoid being crammed down under § 506. The second part of the hanging paragraph, which relates to this type of collateral, states "… or if collateral for that debt consists of any other thing of value …." The use of the adjective "that" in this section indicates a reference to a previously mentioned debt. Specifically, it refers to "the debt that is the subject of the claim" mentioned earlier in the hanging paragraph. The hanging paragraph also requires that a creditor seeking to avoid being crammed down must have "a purchase money security interest securing" this debt. The hanging paragraph then explains that "the debt that is the subject of the claim" is a debt for which the collateral is either a 910-day vehicle or "any other thing of value" purchased within one year prior to the filing of the bankruptcy petition.
>
> It is apparent from the plain language that the difference between the first and second part of the hanging paragraph lies in the type of collateral involved in the transaction and not in the nature of the creditor's security interest. It is equally apparent that a creditor must be secured by a purchase money security interest no matter which type of collateral is involved in the transaction. This is the only interpretation of the hanging paragraph that gives a reasonable and unambiguous meaning to the

11-U.S. Bankruptcy Court, M.D. Tenn.

> phrase "that debt" and to the hanging paragraph as a whole. Therefore, a creditor seeking to avoid being crammed down by virtue of the protections of the hanging paragraph must have a purchase money security interest in its collateral, whether a 910-day vehicle or "any other thing of value."

***In re Curtis*** 345 B.R. 756, 760 -761. The bankruptcy court found that reading the statute broadly, as urged by Wells Fargo in this case, would create an "absurdly expansive" result abolishing cram down for all collateral purchased within one year of the bankruptcy filing, and Congress would surely have made that intent abundantly clear in the hanging paragraph.

This court adopts the reasoning of ***In re Curtis***, and finds that the second "if" clause affords strip down protections only to PMSI creditors on debts incurred within one year prior to the bankruptcy filing. Because this court has found that Wells Fargo is not a PMSI creditor, the court OVERRULES Wells Fargo's objection to confirmation.

The court therefore finds, pursuant to 11 U.S.C. § 1325(a)'s hanging paragraph, the 2002 Ford Expedition was not acquired for the debtor's personal use thereby making the first "if" clause of the hanging paragraph inapplicable to Wells Fargo's claim. Even if the court is mistaken, the court nonetheless finds Wells Fargo does not hold a PMSI in the 2002 Ford Expedition likewise rendering the first "if" clause of the hanging paragraph protections unavailable to Wells Fargo. Finally, the court finds that because Wells Fargo does not have a PMSI, it cannot afford itself of the protections of the second "if" clause of section 1325(a)'s hanging paragraph. Based on all the foregoing, Wells Fargo's objections to confirmation are hereby OVERRULED.

The court instructs counsel for the debtor to prepare an order confirming the plan

not inconsistent with this Court's findings within ten (10) days of entry of this court's Memorandum.

It is, THEREFORE, so ordered.
This \_\_\_\_ day of September, 2006.

***THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.***